**HOLMES, ATHEY,**
**COWAN & MERMELSTEIN LLP**
Andrew S. Cowan (SBN: 165435)
acowan@holmesathey.com
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 516-8055
Fax: (213) 973-6282
*Attorneys for Defendant Allan Austria*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALLAN AUSTRIA, <br><br> Defendant. | Case No. 25-CR-595-MCS <br><br> **OPPOSITION OF DEFENDANT ALLAN AUSTRIA TO GOVERNMENT'S REQUEST FOR DETENTION [ECF 31]** <br><br> Judge: Hon. Mark C. Scarsi <br> Courtroom: 7C <br><br> Hearing Date: August 4, 2025 <br> Hearing Time: 2:00 PM |

This case is a celebrity prosecution. The government has charged defendant Allan Austria and others with hosting high-stakes poker parties at a mansion owned by a retired professional basketball star, co-defendant Gilbert Arenas. The government alleges that the defendants thereby violated, and conspired to violate, 18 U.S.C. § 1955, which criminalizes the operation of a gambling business in violation of state law (here California Penal Code §§ 337j and 330).[1] Local and State prosecutors, however, have evidently shown no interest in pursuing charges stemming from the alleged conduct (which occurred over 3 years ago). Nevertheless, this did not deter the Office of the United States Attorney from putting substantial federal resources into filing this headline-making case.

The government seeks to detain defendant Austria, who allegedly arranged for security at the poker parties. Its efforts fell flat with the Pretrial Services Officer (who recommended release on a $10,000 appearance bond with affidavit of surety), and with United States Magistrate Judge Jacqueline Choolijian, who adopted Pretrial's recommendation with minor modifications and ordered Mr. Austria released. Undeterred, the government now asks this Court—on the same facts already presented to Magistrate Judge Choolijian—to find differently and detain Mr. Austria.

The government's request should be denied because, as set forth below, it cannot meet its burden of establishing (1) that Mr. Austria is a flight risk; (2) that clear and convincing evidence demonstrates that he is a danger to others or to the community; and (3) that no combination of conditions exist that will reasonably ensure his appearance in court and the safety of any other person and the community.

---

[1] Mr. Austria has nothing to do with multiple immigration-related charges awkwardly grafted onto this case, which was apparently investigated by the Department of Homeland Security. *See* Counts 4-7 (charging two co-defendants with conspiracy to commit marriage fraud, marriage fraud, and visa fraud).

## I.     PROCEDURAL BACKGROUND

On July 30, 2025 defendant Allan Austria was arraigned in this matter before the Honorable Jacqueline Choolijian, United States Magistrate Judge. The government sought Mr. Austria's detention, notwithstanding the recommendation of the Pretrial Services Officer that he be released on a $10,000 bond with affidavit of surety. After hearing extensive argument from the government, Magistrate Judge Choolijian concurred with Pretrial's recommendation and ordered Mr. Austria released on a $10,000 bond with an affidavit of surety signed by his life partner, Gina Porras [filed at ECF 33]. This extremely low bond amount indicates that the decision to release Mr. Austra was an easy call for both Pretrial and the Magistrate Judge.

When the government told Magistrate Judge Choolijian that it planned to appeal her order of release, she stayed it until 2:00 PM the following day. In the late evening of July 30, the government filed its instant Application for Review of Order Setting Conditions of Release ("Application") and an *ex parte* request for this Court to stay the order releasing Mr. Austria. [ECF 31, 32]. The Court subsequently granted the *ex parte* request and set the matter for hearing on August 4, 2025 at 2:00 P.M. Mr. Austria therefore remained in custody through the weekend.

## II.     LEGAL STANDARDS

The determination as to whether a person charged with an offense should be released or detained pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq*. The Bail Reform Act "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing 18 U.S.C. § 1341(c)(2)). Except in cases where a statutory presumption of detention exists, courts disfavor the detention of the defendant and resolve any doubts "regarding the propriety of release" in favor of the defendant. *United States v. Townsend,* 897 F.2d 989, 993–94 (9th Cir. 1990).

Case No. 25-CR-595-MCS      -3-      OPPOSITION TO GOVERNMENT'S REQUEST FOR DETENTION

Upon a motion by the government or a judicial officer's own motion, a court is required to hold a detention hearing in order to determine whether any conditions would reasonably assure the appearance of the accused and the safety of the community. *See* 18 U.S.C. § 1341(f).  As to assuring the appearance of the defendant, the government must prove its case by a preponderance of the evidence. *Townsend*, 897 F.2d at 994.  However, "The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community **shall be supported by clear and convincing evidence.**" 18 U.S.C. § 1341(f)(2)(B) (emphasis added).

In determining whether the government has met this clear and convincing evidence burden, § 3142(g) lists various factors the court is to consider, including:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 1341(g); *See also Gebro*, 948 F.2d at 1121.  However, the weight of the evidence is the least important factor in the court's determination. *Townsend*, 897 F.2d at 994. Additionally, in considering these factors, the court must keep in mind

the presumption of the defendant's innocence and that release on bail should only be denied for the strongest of reasons. *See United States v. Motamedi*, 767 F.2d at 1407.

## III. ARGUMENT

### A. The Government Fails to Meet its Burden of Showing that Mr. Austria is a Flight Risk.

Mr. Austria is a United States citizen and a long-time resident of the Central District of California. He has resided at the same residence in West Hills for the past 15 years. He and his life partner Gina Porras have a 13 year-old daughter in the eighth grade, and Mr. Austria is intimately involved with her life, taking her to dance lessons and baseball practices and games multiple times a week.

The government has previously argued that Mr. Austria is a flight risk because he allegedly disobeyed court orders. No evidence exists to support this claim. Although Mr. Austria has a prior federal felony conviction, and a state misdemeanor conviction, there is no indication that he failed to appear for court appearances in either matter, or violated his terms of supervised release.

The government has also argued that Mr. Austria is a flight risk because he has a history of foreign travel. *See* Government's Memorandum in Support of Request for Detention ("Govt. Mem.") at 12 [ECF 75]. There is no suggestion that Mr. Austria has family abroad or that he holds a foreign passport. His U.S. passport was seized by the authorities when he was arrested, which negates the possibility that he could flee to another country. Although the government implies that Mr. Austria could flee to Mexico without a passport (Govt. Mem. at 12), Mexico requires visitors from the U.S. to present a passport upon entry. *See* entry requirements at https://www.us-passport-service-guide.com/mexico-entry-requirements.html.

For these reasons, the government does not meet its burden of establishing that Mr. Austria is a flight risk.

**B.   The Government Fails to Establish by Clear and Convincing Evidence that Mr. Austria is a Danger to the Community or to Others.**

Mr. Austria has no record of violence, and has been charged here with nonviolent offenses: operating and conspiring to operate an illegal gambling business, in violation of 18 U.S.C. §§ 371, 1955. Based on the indictment, the high-stakes poker games at the heart of this alleged gambling business ended over three years ago, in July 2022. *See* Indictment, Counts One and Two. And nothing in the Indictment suggests that Mr. Austria committed any act of violence in furtherance of the alleged conspiracy.

Section 3142(g) lists multiple factors the Court should consider in evaluating whether Mr. Austria poses a danger to the community, and they all weigh in favor of release:

**The nature and circumstances of the offense charged:** Mr. Austria is charged with nonviolent offenses that carry maximum sentences of only five years. Although federal felony charges are inherently serious, the instant charges are at the low end of that scale, as they do not involve drugs, violence, fraud, theft, or other heinous activities. Moreover, Mr. Austria was not alleged to be the leader of the alleged business, but rather the person who arranged for event security. The government claims that the poker parties were "tied to organized crime" and that a co-defendant is a "high-ranking member of an Israeli transnational crime organization." Govt. Mem. at 9. But apart from asserting this in its Memorandum, the government presents absolutely no evidence to substantiate this, and therefore fails to establish these alleged facts by clear and convincing evidence.

**The weight of the evidence:** Mr. Austria has not received discovery in this matter and therefore cannot evaluate the weight of the evidence. However, he is presumed innocent and this factor is deemed the least important in the court's determination. *See Townsend*, 897 F.2d at 994. Here again, the government references "large amounts of digital communications" and "pay/owe sheets" that

allegedly implicate Mr. Austria (Govt. Mem. at 10), but has not presented them for the Court to evaluate or for defendant to challenge. Again, the government has failed to establish these supposed facts by clear and convincing evidence.

**History and characteristics of Mr. Austria:** As previously discussed, Mr. Austria has strong ties to the community, and the government has failed to show that he has any record of disregarding court orders or failing to appear at court proceedings. Moreover, at the time of the current offense he was not on supervised release or probation or subject to any court order.

**Danger posed by Mr. Austria's release:** Finally, the government has failed to demonstrate, by clear and convincing evidence, that Mr. Austria poses a serious danger to any person or the community.

The government argues that Mr. Austria is a danger due to his prior convictions for selling narcotics. Govt. Mem. at 10. His two convictions, however, occurred a quarter-century ago or longer, and the government has presented no evidence suggesting that Mr. Austria has trafficked in narcotics since that time. Those drug crimes were not a crimes of violence; therefore the only "danger to the community" that logically arises from them is the danger of continued narcotics sales—activity that Mr. Austria abandoned long ago. Other than that, the only "danger" comes down to some sort of vague "propensity" danger—*i.e.* that because Mr. Austria has a felony record, that he is inherently dangerous. But under the clear language of § 3142(g), a prior criminal record not establish dangerousness, but is rather just one factor of many to be considered.

The government also argues that Mr. Austria is a danger "to potential witnesses" if released. Govt. Mem. at 11. The government, however, proffers no evidence whatsoever to establish that Mr. Austria has threatened any witnesses in this case, or that he has a history of doing so. The government's bald assertions are not evidence, and are insufficient to establish these supposed facts by clear and convincing evidence.

The government further claims that Mr. Austria poses a danger based because he engaged in "discussions of extortion of other illegal gambling games." Govt. Mem. at 11. To that end, the government quotes from several text messages it attaches as exhibits. Govt. Mem. at 11; Exh. F. These messages, however, are ambiguous and cannot be understood without additional context, which is completely lacking.[2] Moreover, it appears that all of these proffered communications took place in September 2021 while the charged poker operations were ongoing—but the authorities shut down those operations in July 2022 when it executed a search warrant and detained defendant and others. Govt. Mem. at 4. Thus, even if the Court were to credit the government's interpretation of these text messages, they would *at most* be probative of conduct that occurred four years ago—not probative of any ongoing "extortion of other illegal gambling games" as the government contends. *Id.* at 11. Thus, the government has again failed to establish by clear and convincing evidence that Mr. Austria presently poses a threat to the community through extortion.

Finally, the government argues that Mr. Austria poses a danger based on four firearms that it from his residence, firearms that he could not legally possess due to his prior felony convictions  These seized firearms do not establish that Mr. Austria is a danger for the following reasons:

    1. Mr. Austria shared that residence with two other adults, his life partner and her father. Two of the firearms were allegedly found in his bedroom; the other two were found elsewhere in the house and belonged to Mr. Austria's father-in-law. Govt. Mem. at 5-6.

    2. Even though two firearms were found in his bedroom, there is no evidence that Mr. Austria used them in furtherance of any crime. Possessing such firearms

---

[2] The government compares Mr. Austria's alleged activities to that of the Mexican Mafia and claims that his text messages discuss collecting a "tax" on others. This inflammatory rhetoric has no basis whatsoever in the evidence, as the word "tax" does not appear in any of the text messages proffered to the Court.

within his residence would be consistent with a desire to protect his home and family, and not consistent with an intent to harm the community.

3. The Indictment does not allege that Mr. Austria used any firearms in furtherance of the crimes charged against him.

In summary, even if the Court were to find that Mr. Austria possessed two firearms, and possessed them unlawfully, this is but one factor to consider in evaluating dangerousness. And as discussed below, the conditions previously imposed by the Magistrate Judge are enough to mitigate any such danger.

For these reasons, the government has failed to demonstrate, by clear and convincing evidence, that Mr. Austria poses a danger to the community or to any person.

### C. The Government Fails to Demonstrate that No Combination of Conditions Will Reasonably Assure the Appearance of Mr. Austria and the Safety of Any Other Person and the Community.

As argued above, there is no reason to believe that Mr. Austria is a flight risk or that he poses an undue danger to the community. However, to the extent that the Court perceives and risk of flight or danger, these risks can be and have been mitigated by the release conditions imposed by Magistrate Judge Choolijian. Detention is appropriate only if the Court finds that *no combination of conditions* can reasonably ensure his appearance in court and the safety of the community.

In arguing for detention, the government has only argued that Mr. Austria is a flight risk and a danger to the community. The government has utterly failed to explain, as it must, why there are no imaginable set of conditions that the Court could impose to reasonably ensure his appearance and the safety of the community. Because the government has not done so, the presumption of release must prevail.

To the extent that the nonappearance of Mr. Austria raises concerns, this is addressed adequately by the surrender of his passport and by pretrial supervision that requires him to stay in the Central District of California.

To the extent that possession of firearms raises concerns, this is addressed adequately by the condition that he not possess any firearms and not live in any residence in which firearms are kept.

To the extent that the conduct alleged in the Indictment raises concerns, this is addressed by the condition that he not participate in any gambling business.

To the extent that the Court is concerned that Mr. Austria might engage in "extortion" related to other gambling operations (even though there is no evidence he has been involved in gambling operations since 2022), this is also addressed by the condition that he not participate in any gambling business or collection of debt.

The Court is of course free to impose any other conditions, to the extent necessary. But this is not a situation in which it is impossible to impose conditions sufficient to ensure his presence in court and protect the community. To the contrary, as the Magistrate Judge and Pretrial Officer found, these interests are easily met by the conditions articulated in the order of release, coupled with a $10,000 appearance bond with affidavit of surety.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny the government's request for detention and order Mr. Austria released forthwith.

DATED: 8/4/2025         RESPECTFULLY SUBMITTED,

                        HOLMES, ATHEY, COWAN &
                        MERMELSTEIN LLP


                        By:  */s/ Andrew S. Cowan*
                             Attorneys for Defendant Allan Austria